**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

CHANDRA CARTER,                    )
                                   )     CASE NO.     5:12CV2321
            Plaintiff,             )
                                   )
    v.                             )     JUDGE   CHRISTOPHER BOYKO
                                   )
                                   )     MAGISTRATE JUDGE GREG WHITE
                                   )
CAROLYN W. COLVN,                  )
    Acting Commissioner of         )
    Social Security                )     **REPORT & RECOMMENDATION**
                                   )
            Defendant.             )

Plaintiff Chandra Carter ("Carter") challenges the final decision of the Commissioner of

Social Security, Carolyn W. Colvin ("Commissioner"),[1] denying her claim for a Period of

Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423 *et seq*.  This matter is before the Court

pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the

Commissioner be AFFIRMED.

---

[1]      Defendant indicates that Carolyn W. Colvin became the Acting Commissioner of
Social Security on February 14, 2013; and, that, pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin
should be substituted for Michael J. Astrue as the defendant in this suit.  (Doc. No. 16 at 1.)
Plaintiff does not object.

## I.  Procedural History

On July 8, 2009, Carter filed an application for POD and DIB alleging a disability onset date of November 1, 2008 and claiming that she was disabled due to autoimmune hepatitis and diabetes.  (Tr. 146.)  Her application was denied both initially and upon reconsideration.

On February 16, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Carter, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 36- 98.) On February 23, 2011, the ALJ found Carter was able to perform past relevant work and, therefore, was not disabled.  (Tr. 7 - 15.)  The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-3.)

## II.  Evidence

***Personal and Vocational Evidence***

Age 37 at the time of her administrative hearing, Carter is a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963 (c).  She completed three years of college and has past relevant work as an office clerk and secretary.  (Tr. 48, 90.)

***Hearing Testimony***

At the February 16, 2011 hearing, Carter testified to the following:

- She lives with her husband and four children ages 2, 3, 5 and 7.  (Tr. 47.)

- She completed three years of college but did not get a degree.  She is not enrolled in college courses or vocational training.  (Tr. 48-49.)

- She worked from 1997 to June 2003, first as a student assistant and then as a secretary.  (Tr. 49 - 51.)  In both positions, her job duties were primarily clerical in nature; i.e. filing, typing, and running errands.  (Tr. 50-53.)  For these jobs, she was mostly seated and lifted no more than 10 lbs.  (Tr. 54.)

- Prior to December 31, 2008,[2] she experienced symptoms from diabetes, migraines, carpal tunnel syndrome, and autoimmune hepatitis. (Tr. 55-64, 79.) Symptoms related to her hepatitis included fatigue, muscle weakness, back stiffness, lack of concentration, itching, and jaundice. (Tr. 74- 79.) She was prescribed two autoimmune suppressants, Prograf and Imuran. (Tr. 85.) She was also prescribed steroids which caused her to gain one hundred pounds. (Tr. 73-74.) The combination of her medications and the severe itching that she experienced during this time period affected her concentration and caused her to become irritable. (Tr. 74-76.)

- In November and December 2008, she had difficulty caring for her children and performing household chores. Her husband took over the laundry, vacuuming, and dishwashing. She sometimes had to call him home from work to help with the children. (Tr. 80-82.)

- Her liver enzymes have stabilized but she continues to have problems with migraines, carpal tunnel, joint pain, concentration, and fatigue. (Tr. 83-84.) She has three to five "bad days" per month, in addition to days when she has migraines. (Tr. 84-85.)

- She can sit for 20 minutes or so before experiencing pain in her left leg. (Tr. 66-67.) She then needs to stand up for a few seconds to stretch her legs. (Tr. 69.) She can stand for 30 minutes but then needs to sit down for five to ten minutes. (Tr. 69-70.) She can walk for 20 to 30 minutes before needing to sit down. (Tr. 71-72.) She has never had to use an assistive device to walk. (Tr. 71.) She can lift 10 lbs "pretty frequently." (Tr. 70-71.) It is more difficult for her to lift 20 to 30 lbs, but "not extremely difficult." (Tr. 71.) She does not climb stairs very much. (Tr. 72-73.) She can bend "okay." (Tr. 73.)

During the hearing, the VE testified that Carter had past relevant work as a general office clerk and secretary. (Tr. 90.) The ALJ then posed the following hypothetical:

[P]lease assume a hypothetical individual, sir, born on February 9, 1974, with a high school education and above, and work experience as you've just described it. Please further assume, sir, that the individual has the residual functional capacity to perform work at the light exertional level, except the individual can never climb a ladder, rope, or scaffold, can only occasionally climb ramps or stairs, can only occasionally balance, stoop, kneel, crouch,

---

[2] Because December 31, 2008 is Carter's date last insured ("DLI"), the ALJ specifically directed some of his questions to her conditions and symptoms as they existed prior to that date.

or crawl.  Would the individual be able to perform the identified past work
as actually or generally performed?

(Tr. 91.)  In response, the VE testified that such a hypothetical claimant could perform past

relevant work as both a general office clerk and secretary.  (Tr. 91.)

The ALJ then added to the above hypothetical that "the person would only be able to

tolerate occasional and superficial interaction with co-workers and the public, with no

transactional interaction such as sales or negotiation."  (Tr. 91.)  The VE testified that such a

claimant could not perform past relevant work as a general office clerk or secretary, but could

work as a cleaner, hand laundry folder, or sorter.  (Tr. 92.)  The ALJ then added the restriction

that the hypothetical claimant would be "off task at least 25 percent of each work day in addition

to regularly scheduled breaks, or absent from work at least one day per work week."  (Tr. 91-92.)

The VE testified that such a restriction would eliminate all jobs.  (Tr. 93.)

The ALJ then added to the first hypothetical "the criterion that the person would also be

limited to [a] low stress work environment, which I would define as no production rate pace

work, but rather goal oriented work."  (Tr. 93.)  The VE testified that such a hypothetical

claimant would not be able to perform Carter's past relevant work, but would be able to work as

a cleaner, hand laundry folder, or sorter.  (Tr. 93.)

Carter's attorney then asked the VE to consider the ALJ's first hypothetical but add in

manipulative limitations, such as "only occasionally handling or fingering."  (Tr. 93-94.)  The

VE testified such a person could not perform Carter's past relevant work or any of the three

identified jobs, but would be able to work as a surveillance system monitor.  (Tr. 94.)  Carter's

attorney then added the additional restriction of a sit/stand option at will.  (Tr. 94.)  The VE

explained that the surveillance system monitor job could still be performed with a sit/stand

4

option but that such a restriction would "erode the database" by about 25 percent. (Tr. 94.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Carter was insured on her alleged disability onset date, November 1, 2008, and remained insured through December 31, 2008. (Tr. 7.) Therefore, in order to be entitled to POD and DIB, Carter must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir.

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

1967).

1967).

## IV.  Summary of Commissioner's Decision

The ALJ found Carter established medically determinable, severe impairments, due to autoimmune hepatitis and obesity;[4] however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 9-11.) Carter was found capable of performing her past work activities, and was also determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 11.)  The ALJ concluded that Carter could perform her past relevant work as an office clerk and secretary and, therefore, was not disabled.  (Tr. 15.)

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and*

---

[4]     The ALJ also found that Carter had a number of non-severe impairments, including hypertension, blood clots, diabetes, carpal tunnel syndrome, and migraine headaches. (Tr. 9-10.)  Carter does not argue that the ALJ erred in finding these conditions to be non-severe.

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307

(7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If

relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely

overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.*

*Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.

Ohio July 9, 2010).

## VI.  Analysis

### *Consideration of Post-Date Last Insured Evidence at Step Three*

Carter argues the medical evidence establishes she suffered from a slowly progressive

liver disease that met Listing 5.05(B) before her December 31, 2008 date last insured ("DLI").

She maintains the ALJ committed reversible error when he failed to consider medical evidence

regarding the severity of her autoimmune hepatitis *post-dating* her DLI in conjunction with

medical evidence relevant to her condition *prior to* her DLI.  (Doc. No. 15 at 1.)

The Commissioner first notes that Carter's counsel conceded at the February 16, 2011

hearing that Carter did not meet Listing 5.05(B) because she did not satisfy that Listing's

requirements.  (Doc. No. 16 at 8, Tr. 43-44.)  She then argues that "any evidence after Plaintiff's

date last insured may not be considered in determining whether she was entitled to DIB prior to

December 31, 2008."  (Doc. No. 16 at 3.)  Finally, the Commissioner argues the medical

evidence does not demonstrate that Carter met the requirements of Listing 5.05(B).

At the third step in the disability evaluation process, a claimant will be found disabled if

his impairment meets or equals one of the Listing of Impairments.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec*., 2010 WL 2294531 at * 3

(6th Cir.  June 7, 2010).  The Listing of Impairments, located at Appendix 1 to Subpart P of the

8

regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. *Id.*; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). However, a claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

In order to establish eligibility for disability benefits, however, a claimant must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423(c)(1); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Thus, "as a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status." *Forshee v. Comm'r of Soc. Sec.*, 2012 WL 1672974 at * 8 (E.D. Mich. April 11, 2012).

That being said, the Sixth Circuit has found that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time." *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976). Federal courts have therefore held that "medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition

prior to the expiration of insured status." *Anderson v. Comm'r of Soc. Sec.*, 440 F.Supp.2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); and *Begley*, 544 F.2d at 1354). *See also Forshee*, 2012 WL 1672974 at * 8; *O'Bert v. Comm'r of Soc. Sec.*, 2009 WL 3010846 at * 11 (S.D. Ohio Sept. 21, 2009). When post-DLI evidence is relevant, "the date of that evidence is a factor to be considered in assigning relative weight to that evidence." *Sweitzer v. Astrue*, 2009 WL 3064665 at * 3 (E.D. Tenn. Sept. 23, 2009). *See also Higgs*, 880 F.2d at 863 (finding that post-DLI evidence may be considered but a delay of two years renders that evidence "minimally probative").

Here, the ALJ was presented with an onset date of November 1, 2008 and a DLI of December 31, 2008. (Tr. 7.) Accordingly, in order to qualify for disability benefits, Carter had to establish that her disability commenced prior to December 31, 2008. *See Moon,* 923 F.2d at 1182; *Higgs,* 880 F.2d at 862. Carter maintains the medical evidence from both before and shortly after that date indicate her autoimmune hepatitis met or equaled Listing 5.05(B) and that the ALJ erred in finding otherwise. (Doc. No. 15 at 11.) The relevant medical evidence cited by the parties is as follows.

In September 2008, Carter was diagnosed with HELLP Syndrome[5] during the delivery of her fourth child. (Tr. 376.) She presented with elevated liver enzymes and underwent an ultrasound and MRI of her abdomen on September 4, 2008. (Tr. 420-421, 1119.) The ultrasound

---

[5]     HELLP Syndrome is a group of symptoms that occur in pregnant women who have (1) hemolysis (the breakdown of red blood cells); (2) elevated liver enzymes; and, (3) low platelet count. The main treatment is to deliver the baby as soon as possible. *See* http://www.nlm.nih.gov/medlineplus/ency/article/000890.htm.

indicated gallbladder wall thickening but found that Carter's liver "appear[ed] to be within normal limits." (Tr. 422.) The MRI showed "subtle edema . . in the focal areas in the right lobe of the liver" and "diffuse ascites."[6] (Tr. 420-421.)

Carter underwent another MRI of her abdomen on September 6, 2008. (Tr. 418-419.) The results showed "areas of abnormal signal seen predominantly in the dome of the right lobe of the liver as well as the dome of the lateral segment left lobe of the liver," and "subtle areas of abnormal T2W signal consistent with edema." (Tr. 418-419.) It also indicated "less ascites" and "less edema in the abdominal wall." (Tr. 419.) On September 10, 2008, a CT scan of Carter's abdomen and pelvis showed "lesions in the liver, without significant change from 9/6/08;" diffuse periportal edema in the liver; and a "small amount of ascites." (Tr. 416-417.)

In November and December 2008, Carter presented to the emergency room ("ER") with complaints of excessive itchiness and jaundice. (Tr. 325-326, 348-349, 950-951.) She was found to have low albumin levels and elevated liver function tests. (Tr. 326, 349, 951.) She was prescribed steroids. (Tr. 326, 349, 951.) An ultrasound of Carter's abdomen on December 4, 2008 indicated her liver was "within normal limits" and that "there is no free fluid in the abdomen." (Tr. 563.) It noted that "abnormal findings on a CT scan of the abdomen . . . from 9/10/08 include liver lesions and hypodensities in the kidneys. These are not identified on today's ultrasound exam." (Tr. 563.) It did show a "mildly dilated common bile duct" but found "no other remarkable findings on today's ultrasound exam." (Tr. 563.) Additional imaging was recommended. (Tr. 563.)

_____

[6]     Ascites are defined as the "effusion and accumulation of serous fluid in the abdominal cavity; called also abdominal or peritoneal dropsy, and hydroperitonia." Dorland's Illustrated Medical Dictionary, 30th Ed., 2003.

On December 26, 2008, a biopsy of Carter's liver showed "normal hepatic parenchyma with lobular architecture and unremarkable portal tracts and central veins." (Tr. 338.)  There was no evidence of steatosis, iron accumulation, bile stasis, bile duct destruction, or granulomas. (Tr. 338.)  There was also no evidence of significant fibrosis, cirrhosis, liver cell dysplasia, or malignancy. (Tr. 338.)  It noted that the "main pathologic finding is rare acidophilic bodies, some with associated active inflammation." (Tr. 338.)  However, it stated that "the inflammatory changes are limited and non-specific." (Tr. 338.)

Carter presented to hepatologist Nicolas Zein, M.D., on January 5, 2009 for evaluation of elevated liver enzymes. (Tr. 579.)  Dr. Zein diagnosed likely acute onset autoimmune hepatitis. (Tr. 581-582.)  He prescribed Imuran and increased her steroid dosage. (Tr. 581.)  Carter cites evidence indicating she exhibited low albumin levels in January through April 2009, ranging between 2.7 g/dL and 3.0 g/dL. (Tr. 571, 885, 887.)  In March 2009, Dr. Zein noted that Carter had a slow but consistent response to the steroids. (Tr. 573.)  In October 2009, a CT scan of Carter's abdomen and pelvis indicated "no morphologic changes of cirrhosis or portal hypertension" and "no hypervascular hepatic lesion." (Tr. 850-851.)  It also reported no ascites in the spleen. (Tr. 850.)

By November 2009 (eleven months after her DLI), Dr. Zein reported that Carter continued to show low albumin levels and significant side effects from her steroid treatment, including fluid retention, moon face, and steroid induced diabetes "that is becoming difficult to control." (Tr. 754, 875.)  She was diagnosed with end stage liver disease and placed on a liver transplant list. (Tr. 700- 701, 774, 777, 853.)   In treatment notes from August 2010, Dr. Zein indicated Carter was still on the liver transplant list but that he "may take [her] off list if she

12

remains well as we keep weaning meds." (Tr. 1351.)

Carter does not direct this Court's attention to any treating or examining physician opinion that either evaluates whether she met or equaled a listing, or assesses her functional abilities. In November 2009, however, state agency physician Ralph Graham, M.D., reviewed Carter's medical records and completed a physical residual functional capacity examination. (Tr. 692- 699.) Dr. Graham determined Carter could perform work at the light exertional level; i.e. that she could (1) lift 10 lbs frequently and 20 lbs occasionally; (2) sit for six hours and stand and/or walk for 6 hours in a normal 8-hour workday; (3) frequently stoop and kneel; and, (4) occasionally crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 692-699.) In so finding, Dr. Graham references medical evidence regarding Carter's condition from September 2008 through June 2009, including the results from her December 2008 liver biopsy and evidence indicating her "albumin [levels] hovered about 2.9 [g/dL]." (Tr. 693-694.) Subsequently, in April 2010, state agency physician Jerry McCloud, M.D., completed a case analysis report and affirmed Dr. Graham's assessment as written. (Tr. 1129.) Dr. McCloud expressly found that Carter's "condition did not meet or equal the listings during the relevant time period (AOD-DLI)." (Tr. 1129.)

Based on the above, and additional medical evidence regarding her other impairments, the ALJ determined at step two of the sequential evaluation process that Carter's autoimmune hepatitis and obesity constituted severe impairments. (Tr. 9.) The ALJ then found, at step three, that Carter's impairments, alone or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 10.) Specifically, the ALJ determined that:

No treating or examining physician has indicated findings that would satisfy the criteria of any listed physical impairment.  In reaching the conclusion that the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment, I also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial level of the administrative review process and reached the same conclusion (20 CFR 404.157(f), 416.927(f) and Social Security Ruling 96-6p).  In reaching this conclusion, I considered all of the listed impairments, but specifically Listings 5.05 and 5.09.  With regard to the latter two listings, I specifically considered the assertion by Ms. Balin in a prehearing brief that claimant met both of these listed impairments, and questioned Mr. Delesk extensively on the matter at hearing.  Upon due consideration of these arguments, I still conclude that claimant's impairments do not meet a listed impairment for the relevant time period.

(Tr. 10-11.)

Carter argues the ALJ erred in finding that her autoimmune hepatitis did not meet Listing 5.05(B) because he failed to consider objective medical evidence post-dating her DLI.[7]  (Tr. 11.) In order to meet Listing 5.05(B), an individual with chronic liver disease must exhibit, in relevant part, the following:

B.   Ascites or hydrothorax not attributable to other causes, despite continuing treatment as prescribed, present on at least 2 evaluations at least 60 days apart within a consecutive 6 month period.  Each evaluation must be documented by:

1.   Paracentesis or thoracentesis; or

2.   Appropriate medically acceptable imaging or physical

---

[7]      Listing 5.00 (Digestive System) lists autoimmune hepatitis as an example of chronic liver disease.  *See* 20 CFR 404, Subpart P, Appendix; Listing 5.00(D)(2).  It states that signs and symptoms of chronic liver disease may include pruritis (itching), fatigue, jaundice, enlargement of the liver and spleen, ascites (i.e. accumulation of fluid in the abdominal cavity), and peripheral edema.  *See* Listing 5.00(D)(3)(a) and (b).  Relevant laboratory findings may include increased liver enzymes, increased serum bilirubin, decreased serum albumin and increased INR or decreased platelet counts.  *See* Listing 5.00(D)(3)(c).  Listing 5.00 further states that "[a]bnormally low serum albumin or elevated INR levels indicate loss of synthetic liver function, with increased likelihood of cirrhosis and associated complications." *Id.*

examination and one of the following:

a. Serum albumin of 3.0 g/dL or less; or

b.  International Normalized Ratio (INR) of at least 1.5.

*Id*. at 5.05(B).

Carter argues that she met the requirements of this Listing prior to her DLI in light of:  (1) objective medical evidence of ascites on September 10, 2008 and January 26, 2009, despite continuing immunosuppressant treatment; and, (2) laboratory results showing her serum albumin was below 3.0 g/dL in both September 2008 and between January and March 2009.  (Doc. No. 15 at 12-13.)  She maintains that "the ALJ should have considered Carter's 1/26/09 MRI findings and blood work indicating listing-level chronic liver disease because they were 'reasonably proximate' to Carter's 12/31/08 DLI and supported by evidence of autoimmune hepatitis that arose during her insured period."  (Doc. No. 15 at 13.)

The Commissioner does not acknowledge or address Sixth Circuit precedent indicating that post-DLI medical evidence may be used to establish the existence of a disabling condition prior to a claimant's DLI if it is relevant and "reasonably proximate in time."  *See Begley*, 544 F.2d at 1354.  Rather, the Commissioner maintains that Carter does not meet the Listing because she did not have ascites with the required lab results "during the relevant time period."  (Doc. No. 16 at 10.)  Specifically, she contends that "prior to Plaintiff's alleged onset of disability in September 2008, diagnostic tests showed that she had ascites" but "the amount of ascites decreased and there was no evidence that Plaintiff had ascites during the relevant time period." *Id*.  She also argues there was "no evidence that Plaintiff had the required lab results during the relevant time period."  *Id*.

15

Given the progressive nature of her condition, the Court finds Carter is correct that, in this Circuit, post-DLI evidence which is both relevant and reasonably proximate in time to a pre-DLI condition may be considered by the ALJ in determining whether a claimant met a listing prior to her DLI.  *See Begley*, 544 F.2d at 1354; *Anderson*, 440 F.Supp.2d at 699.  Carter's argument fails, however, because she has not demonstrated either that the ALJ failed to consider post-DLI evidence, or that such evidence establishes that she met the requirements for Listing 5.05(B).

Reading the decision as a whole, it is clear the ALJ did not limit his consideration to only medical evidence dated between Carter's alleged onset date of November 1, 2008 and her DLI of December 31, 2008.  To the contrary, the decision expressly discusses objective medical testing conducted several months prior to her onset date, including the MRIs conducted on September 4 and 6, 2008, and the CT scan conducted on September 10, 2008.  (Tr. 12.)  The decision also references Carter's diagnosis of HELLP Syndrome during her pregnancy in September 2008. (Tr. 13.)  The ALJ then discusses the MRI of Carter's abdomen on December 4, 2008 as well as the results of her December 26, 2008 liver biopsy.  (Tr. 12.)  With regard to the post-DLI time period, the decision acknowledges Carter's January 2009 diagnosis of autoimmune hepatitis and cites treatment notes from 2009 indicating she suffered from jaundice, intense itching, pain, fatigue. (Tr. 13, citing Exhibits 3F at 3, 5, 29, 52 dated 3/29/09, 12/4/08 and 12/30/08; 5F at 9 dated 3/3/09; 2F at 7 dated 6/29/09; 11F at 16 dated 10/14/09; 12F at 65 dated 8/22/09).  In addition, the ALJ relies on treatment notes from December 2008, May 2009 and October 2009 when noting that Carter had elevated liver function tests and cirrhosis of the liver. (Tr. 13 citing Exhs. 11F at 98-99 dated 10/12/09; 5F at 5 dated 5/4/09, and 3F at 53 dated 12/3/08.)  Thus, the ALJ did not focus entirely on the narrow window between her alleged onset date and DLI.

16

It is true that the decision does not expressly reference the January 26, 2009 MRI of Carter's abdomen and pancreas. (Tr. 562.) Carter makes much of this omission, arguing that this MRI provides objective medical evidence that she experienced ascites only three weeks after her DLI. (Doc. No. 15 at 12.) She argues that this MRI, read in conjunction with the September 10, 2008 CT scan finding a "small amount of ascites" and laboratory results showing low albumin levels, show conclusively that she met Listing 5.05(B) prior to her DLI. (Doc. No. 15 at 12-13.) However, the Final Report of Carter's January 26, 2009 MRI does not appear to make any express finding of ascites. (Tr. 562.) In fact, the word "ascite" does not appear anywhere in this Report. (Tr. 562.) Carter does not provide any explanation of this omission, or otherwise explain to this Court how the January 26, 2009 MRI findings indicate the presence of ascites.[8]

In addition, Carter does not cite any opinion from a treating or examining physician indicating that the January 26, 2009 MRI indicates the presence of ascites. Nor, for that matter, does she cite any treating or examining physician opinion indicating that she met Listing 5.05(B) at any point in time. Indeed, in his step three discussion, the ALJ expressly notes that "[n]o treating or examining physician has indicated findings that would satisfy the criteria of any listed physical impairment." (Tr. 10.) Carter does not argue that this statement is factually inaccurate, or otherwise direct this Court's attention to any medical opinion evidence suggesting she met or equaled Listing 5.05(B). Moreover, neither state agency physician Graham or McCloud indicated the presence of ascites in the January 26, 2009 MRI or found that Carter's condition

---

[8]    In her Brief, Carter repeatedly indicates that the January 26, 2009 MRI Final Report is located at page 562 of the Transcript. She does not include any other transcript citations or otherwise indicate that this Report contains additional pages. If there are additional pages to this Report, it was Carter's obligation to direct this Court's attention to them.

was sufficient to meet Listing 5.05(B).  This is particularly significant since Dr. Graham

expressly considered medical evidence from both before and after Carter's DLI, including

evidence that Carter's albumin levels "hovered" around 2.9 g/dL, which is below the level set

forth in Listing 5.05(B).  (Tr. 693-694.)  Despite this evidence, Dr. Graham did not opine that

Carter met Listing 5.05(B), which is consistent with that Listing's requirement that a claimant

demonstrate both the presence of ascites and albumin levels of 3.0g/dL or less.

 In light of the above, the Court finds the ALJ did not commit reversible error at step

three of the sequential evaluation process in his consideration of the medical evidence of Carter's

autoimmune hepatitis.  Accordingly, Carter's first assignment of error is without merit.

### Sufficient Articulation of Step Three Listing Analysis

Carter next argues the ALJ failed to sufficiently articulate his reasoning for finding that

her autoimmune hepatitis did not meet or medically equal Listing 5.05(B).  (Doc. No. 15 at 14.)

Specifically, she maintains the ALJ committed reversible error because he failed to expressly

compare the medical evidence of record to the specific requirements of the Listing. *Id*.

The Commissioner argues the ALJ sufficiently articulated his reasons for finding Carter

failed to meet or equal Listing 5.05(B) because (1) he specifically indicated that he considered

Listing 5.05(B); (2) he questioned Carter's counsel about that Listing during the hearing and

counsel conceded Carter did not satisfy the Listing requirements; and, (3) the decision as a whole

demonstrates that he considered Carter's autoimmune hepatitis diagnosis, the objective medical

findings, and treatment records.  (Doc. No. 16 at 10-11.)

The Sixth Circuit "does not require a heightened articulation standard at step three of the

sequential evaluation process." *Marok v. Astrue*, 2010 WL 2294056 at * 3 (N.D. Ohio June 3,

18

2010) (quoting *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. Jan. 31, 2006)).  *See also Waller v. Astrue*, 2012 WL 6771844 at *3 (N.D. Ohio Dec. 7, 2012).  Nonetheless, the regulations state that an ALJ should review all evidence of impairments to see if the sum of impairments is medically equal to a "listed impairment." 20 C.F.R. §§ 404.1526, 416.926.  Moreover, in order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision.  *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 4 (6th Cir. April 1, 2011); *Marok,* 2010 WL 2294056 at * 3.

Here, the ALJ explained that he specifically considered whether Carter's impairments met or equaled the requirements of Listing 5.05(B), but found that they did not in light of the lack of medical opinion evidence supporting such a conclusion.  (Tr. 10-11.)  He noted that "no treating or examining physician has indicated findings that would satisfy the criteria of any listed physical impairment." (Tr. 10.)  Morever, in reaching the conclusion that Carter's impairments did not meet or equal a listed impairment, the ALJ explained that he considered  "the opinion of State Agency medical consultants who evaluated this issue . . . and reached the same conclusion."  (Tr. 10-11.)

Carter argues these reasons are insufficient because the ALJ's first rationale (i.e. that no treating physician indicated findings that would satisfy the listing criteria) constitutes "a blanket assertion that found no support in the record since examining physicians ordered medical tests that revealed listing-level liver disease," i.e. the September 10, 2008 CT scan,  January 26, 2009 MRI, and lab results showing low albumin levels. (Doc. No. 15 at 14.)  Carter further argues the ALJ's reliance on the state agency medical consultants' opinions is unfounded because those opinions failed to consider any post-DLI evidence.  *Id.*

19

The Court rejects these arguments for the reasons set forth in connection with Carter's first assignment of error.  Reading the decision as a whole, the ALJ considered the objective medical evidence and treatment notes regarding Carter's autoimmune hepatitis from both before and after Carter's DLI.  Moreover, while it might have been preferable for the ALJ to have included a more detailed comparison of Carter's medical records to the listing requirements, the Court cannot say the ALJ committed reversible error in failing to do so here.  As discussed *supra*, the decision reflects that the ALJ was thoroughly aware of the medical evidence regarding Carter's autoimmune hepatitis and other impairments.  Indeed, the ALJ specifically discusses Carter's September 2008 MRIs and CT Scan; December 2008 MRI, ultrasound and biopsy; January 2009 diagnosis of autoimmune hepatitis; and, treatment notes from 2009 reflecting symptoms relating to her liver issues. (Tr. 12-13.)  Moreover, relying on evidence from both before and after Carter's DLI, the ALJ notes the record does not indicate that Carter underwent a liver transplant or had any other surgeries or intensive treatment related to her diagnosis of autoimmune hepatitis.  (Tr. 13.)  Rather, the ALJ cites medical evidence indicating that Carter's condition "stabilized and ultimately improved with close monitoring and prescription medications, within the relevant time period."  (Tr. 13.)  The Court finds this analysis is sufficient to explain the ALJ's step three reasoning under the circumstances presented herein.

Based on the above, and in light of the lack of any medical source opinion to the contrary, the Court finds the ALJ sufficiently articulated his reasoning for finding that Carter's impairments did not meet or equal Listing 5.05(B) and, further, that this finding is supported by substantial evidence in the record.  Accordingly, Carter's second assignment of error is without merit.

20

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White
United States Magistrate Judge

Date: July 12, 2013


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**